UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| NEFTALI IRIZARRY : | |
|     Plaintiff, : | |
| : | No. 19-cv-922 (VLB) |
| v. : | |
| : | |
| HNS MANAGEMENT COMPANY, : | March 29, 2021 |
| INC. : | |
|     Defendant. : | |
| : | |
| : | |
| : | |

**MEMORANDUM OF DECISION GRANTING DEFENDANT HNS MANAGEMENT COMPANY, INC.'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Neftali Irizarry alleges that Defendant HNS Management Company, an operator for the state bus system, discriminated against him on account of his disability when it terminated him from his position as a passenger bus driver while on an extended medical leave. [Dkt. 1 (Compl.)](count one). Plaintiff also alleged violations of the Family Medical Leave Act, 29 U.S.C. § 2612, *et seq.*, ("FMLA") but withdrew these claims on summary judgment. [Dkt. 35-1 (Pl. Mem. in Opp'n) at 1-2]. The parties agree on most of the essential facts. The issue on summary judgment hinges on whether there was a suitable vacant position available at the time Plaintiff requested a transfer as an accommodation for his disability. Because there is no genuine issue of material fact that there were no suitable vacant positions after he made an accommodation request following his March 27, 2018 fitness for duty examination, the Defendant is entitled to summary judgment.

1

## Background

The following facts are taken from the Local Rule 56 statements of material facts and evidence cited by the parties. The facts are read in the light most favorable to the non-movant, Mr. Irizarry. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Plaintiff was hired by the Defendant as a bus operator in 2014. [Dkt. 32-22 (Def. Local Rule 56(a)(1) Statement of Material Facts) ¶ 1](admitted). As a condition of employment, Plaintiff was required to hold the requisite Connecticut Commercial Driver's License and maintain an up to date Medical Examiner's Certificate per federal transportation regulations. [*Id*. ¶ 3](admitted). As a condition of employment and upon return to work from a leave of absence for an illness or injury, Defendant required bus operators to undergo a physical examination to ensure that the are medically qualified to safely operate a bus. [*Id*. ¶ 5](admitted). Operation of a bus requires manual dexterity including extensive use of the hands and fingers for grasping the steering wheel, using turn signals and other equipment. [*Id*. ¶ 4](admitted).

On September 11, 2017, Plaintiff sustained a serious injury to his right ring finger outside of work, which required surgery to reconstruct the tendons. [*Id*. ¶ 6](admitted). Plaintiff alerted Defendant to the injury the next day. [*Id*. ¶ 7](admitted). Defendant sent Plaintiff FMLA paperwork for completion by his clinicians, which he returned. [*Id*.]. The medical certification form states that plaintiff is unable to use his right hand and that the condition was expected to last

2

three to six months. [Dkt. 32-7, Def. Ex. 6 (FMLA Medical Certification, 9/19/2017];  [Def. 56(a)(1) Statement ¶ 9](admitted).

Additionally, Plaintiff spoke with Dylia Turley, a Superintendent of Transportation, a few days after the accident and explained that he needed surgery and would be out indefinitely. [Def. 56(a)(1) Statement ¶ 8](admitted); [Dkt. 32-14, Def. Ex. 13 (Turley Aff.) ¶ 2](identifying Turley's position). On or around September 15, 2017, Plaintiff received a letter detailing his available sick time and short-term disability benefits and the information he was required to provide to the Defendant regarding his condition. [Def. 56(a)(1) Statement ¶ 9](admitted); [Dkt. 32-9, Def. Ex. 8 (Sept. 15, 2017 ltr.)].

Plaintiff avers that Defendant failed to notify him that his request for medical leave was approved and designated as FMLA leave. [Dkt. 35-3 (Pl. Local Rule 56(a)(2) Statement) ¶ 10]. The Court need not resolve the issue of whether Plaintiff was informed of his FMLA rights because Plaintiff withdrew his FMLA claims and it is undisputed that Plaintiff received a total of sixteen weeks of medical leave. [Def. 56(a)(1) Statement ¶ 14] (admitted).[1] The parties agree that Plaintiff's medical leave under the FMLA and Connecticut law expired on January 2, 2018, which Plaintiff understood at the time. [*Id.* ¶¶ 13-14] (admitted). That day, Plaintiff submitted a letter from his physician stating that Plaintiff should remain out of work

---

[1] In general, a qualified employee is eligible for 12 work weeks of medical leave per year under the FMLA. 29 U.S.C. § 2612(a)(1). Under Connecticut law, a qualified employee is eligible for 16 work weeks of medical leave during a two-year period. Conn. Gen. Stat. § 31-51ll.

3

until February 16, 2018 and that he would be reevaluated. [*Id.*](admitted); [Dkt. 22-10, Def. Ex. 9 (Jan. 2, 2018 ltr)].

Defendant granted Plaintiff's implied request for an extension of his medical leave and awaited the results of Plaintiff's clinical reevaluation before determining whether he was medically disqualified from performing his job. [Def. 56(a)(1) Statement ¶ 14](admitted). Blendi Nako, another Superintendent of Transportation, sent a letter to Plaintiff dated February 6, 2018, which informed Plaintiff that he exhausted all available sick time and medical leave. [*Id.* ¶ 15](admitted); [Dkt. 32-2 (Nako Aff.) ¶2] (explaining Nako's position); [Dkt. 32-11, Def. Ex. 10 (Feb. 6, 2018 ltr)]. The letter explains that its purpose is "…to give you advance notice that your employment status will be changed to 'Medical Disqualification' unless you are medically cleared to return to work within a reasonable amount of time." [Def. Ex. 10]. The letter set a deadline of February 20, 2018 to provide medical documentation stating when Plaintiff would be able to return to work with full, unrestricted duties. [*Id.*]. The letter states "You may be considered for other positions with CTtransit provided you are qualified to perform the duties of the position." [*Id.*]. The letter references and includes a copy of Defendant's policy titled, "REASONABLE ACCOMMODATION POLICY UNDER THE AMERICANS WITH DISABILITIES POLICY (ADA)," (sic) which itself includes a blank accommodations request form. [*Id.*]. Plaintiff received the letter on February 6, 2018. [Def. 56(a)(1) Statement ¶ 15](admitted).

On February 23, 2018, Plaintiff submitted a letter from his physician which stated that he could return to full duty from that physician's perspective, but the

4

physician referred Plaintiff for a functional capacity test to evaluate his injured finger. [*Id.* ¶ 16](admitted); [Dkt. 32-12, Def. Ex. 11 (Feb. 23, 2018 ltr.)]. Plaintiff testified that he was unable to have the functional capacity test performed because it was not covered by his health insurance. [Dkt. 35-4, Pl. Ex. 1 (Irizarry Depo.) at 109:09-109:17]. Defendant referred Plaintiff to the St. Francis Care Center for Occupational Health for a return to work physical. [Def. 56(a)(1) Statement ¶ 18](admitted). The examination included the Minnesota Manual Dexterity Test, which Plaintiff previously had to complete during his pre-employment physical examination. [*Id.* ¶ 18](admitted). Plaintiff passed the physical examination except for the dexterity test. [*Id.* ¶ 19](admitted); [Dkt. 32-13, Def. Ex. 12 (Mar. 27, 2018, Return to Work Exam. Recommd.)]. The physician assistant who evaluated Plaintiff checked a box on the form indicating Plaintiff was "Not medically qualified for the prospective job for which he/she has been examined." [Def. Ex. 12 at 1]. The physician assistant determined that Plaintiff's grip strength and range of motion of two of his fingers was diminished. [*Id.* at 2]. He opined that "I do not believe the patient can return to his normal job as a bus driver because of the lack of adequate grip strength and ability to turn the wheel. I did tell him that I thought he should attempt to do alternative jobs such as moving vehicles in the lot and washing them but without passengers." [*Id.*].

After the March 27, 2018 examination, Plaintiff contacted Dylia Turley to inquire about other positions. [*Id.*]. Plaintiff testified that he inquired generally about other positions "As long as it was within Connecticut's Transit…I told her I could do anything. The doctor said I could do anything; but drive without

5

passengers." [Pl. Ex. 1 (Irizarry Depo.) at 118:15-118:19]. Ms. Turley then contacted Mark Fallon, the transportation division manager for Hartford, regarding alternative positions. [Def. 56(a)(1) Statement ¶ 20](admitted). Plaintiff testified that Ms. Turley told him that she was in contact with the maintenance department that oversees cleaning buses and that he spoke with her three times. [Pl. Ex. 1 (Irizarry Depo.) at 47:01-47:21].

Plaintiff also filed a copy of a completed accommodations request form, dated March 29, 2018, which states that "I can pretty much do everything but drive with passengers on board." [Dkt. 35-10, Pl. Ex. 7 (Accommodations Request form)]. Defendant denies receiving the form. [Dkt. 38 (Def. Repl. Br.) at 2, n. 1]. Whether or not the document was sent is immaterial because the Defendant acknowledges that Plaintiff made the same request orally to Ms. Turley.

The parties dispute whether Mr. Fallon contacted Ms. Turley regarding the availability of an alternative position for Plaintiff. [Pl. 56(a)(2) Statement ¶ 20]. The Defendant argues that Mr. Fallon contacted Jacinto Torres, Director of Maintenance/Equipment, to identify an appropriate alternative position, but none were available. [Def. 56(a)(1) Statement ¶ 21]. Plaintiff argues that Ms. Turley testified that Mr. Fallon never responded to her inquiry regarding whether there were open positions for Plaintiff. [Dkt. 35-5, Pl. Ex. 2 (Turley Depo.) at 23:18-25:10]. Reviewing Ms. Turley's deposition testimony and Mr. Torres's affidavit [Dkt. 22-15, Def. Ex. 14 (Torres Aff.)] reveals that there is no dispute: Ms. Turley made the inquiry to Mr. Fallon, who in turn inquired with Mr. Torres about available positions, but then failed to follow up with Ms. Turley after he learned that there were no

6

available vacancies. Ms. Turley testified that she relied on Mr. Fallon to determine whether there were any suitable positions for Plaintiff because he had decision making authority. [Pl. Ex. 2 (Turley Depo.) at 29:05-29:13].

Mr. Torres and Mr. Fallon determined that, based on Plaintiff's physical limitations, that he could not work as a cleaner because the position would require him to operate a bus in the facility, which they felt would pose a safety risk. [Def. Ex. 14 (Torres Aff.) ¶ 4]. Plaintiff testified that, in his experience, some cleaners do not move buses. [Dkt. 32-6, Def. Ex. 5 (Irizarry Depo.) 118:20-118:25]. However, there is no evidence that a cleaner position was available after Plaintiff requested consideration for an alternative position. Plaintiff testified that he never saw a posting for a cleaner position and never applied for the position. [*Id*. at 119:25-120:04]. Mr. Torres's affidavit states: "We determined that there were no positions for which he would be medically cleared and qualified for at that time. *Even if a Cleaner position became available*, it required moving and operating the buses in the facility." [Def. Ex. 14 (Torres Aff.) ¶ 4](emphasis added). Thus, Mr. Fallon's inquiry into a potential assignment to a cleaner position was prospective in the event of a vacancy which never arose.

Blendi Nako was aware that Plaintiff could perform jobs that did not require him to operate a bus with passengers and testified that he contacted Mr. Fallon and Jocelyn McDonald in human resources to determine if other positions were available for the Plaintiff. [Pl. 56(a)(2) Statement ¶ 8](citing Dkt. 35-6, Pl. Ex. 3 (Nako Depo.) at 25]. Mr. Nako testified that he informed Plaintiff of his contact with Mr. Fallon, but Mr. Nako did not independently search for available openings. [*Id*. at

25:17-26:12]. Mr. Nako testified that Mr. Fallon told him there were no available openings in maintenance. [*Id.* at 26:17-26:25]. Ms. McDonald testified that she has no recollection of Mr. Nako or anyone else contacting her regarding Plaintiff's availability for an alternative position. [Dkt. 35-7, Pl. Ex. 4 (McDonald Depo.) at 11:14-12:09]. Ms. McDonald never searched for an alternative position for Plaintiff. [*Id.* at 12:03-12:07].

The parties dispute when Plaintiff was first made aware of available openings. Plaintiff's testimony is inconsistent on this issue. After acknowledging that he was aware of jobs being posted on Defendant's website, he was asked "And you were given almost monthly notices from Connecticut Transit of available positions, correct?", to which he responded "Whenever they came, you know." [Pl. Ex. 1 (Irizarry Depo.) at 119:13-119:20]. Plaintiff testified that he reviewed the postings as they were received in the mail, but that "…I wasn't qualified for it. There was no (sic) any for my qualifications." [*Id.* at 119:21-119:24].

During discovery, Defendant produced job postings available as of March 9 and March 23, 2018. [Dkt. 35-11, Pl. Ex. 8 (Employment Opportunities)]. Plaintiff identified two open positions for which he argues he was qualified but was not informed of: Traffic Specialist and Money Counter. [Pl. Mem in Opp'n at 3-4, 10-11]. Plaintiff testified that he was familiar with the job duties of a traffic specialist because he observed them on his route. [Pl. Ex. 1 (Irizarry Depo.) at 188:09-188:25]. He described watching them tracking passenger data on a tablet. [*Id.*]. The position requires "[o]ne year of full-time office experience with emphasis on figures and accurate record keeping," and the candidate "must be able to make arithmetic

8

computations rapidly and accurately using calculators and hour/minute machines," and be "proficient in software programs." [Pl. Ex. 8 at 4]. The March 9, 2018 employment opportunities page indicates that the position was posted on February 15, 2018 and the position does not appear on the employment opportunities list two weeks later. [Pl. Ex. 8]. The money counter position was posted on March 23, 2018 and requires "two years of full-time experience with an emphasis on figures and accurate record keeping or bookkeeping." [*Id.* at 7]. Plaintiff testified that he never had a job that involved keeping figures or accurate record keeping. [Dkt. 38, Def. Repl. Br., Ex. A (Irizarry Depo.) at 190:06-190:08].

Plaintiff did not communicate with the Defendant in May, June, or July of 2018. [Def. 56(a)(1) Statement ¶ 25](admitted). Plaintiff looked for other employment in June and July 2018 and applied for unemployment benefits. [*Id.*]. Apart from his request for consideration for any other vacancy, Plaintiff did not apply for any open positions on the career page of the Defendant's website. [Def. 56(a)(1) Statement ¶ 26](admitted). During this time, Plaintiff was not formally terminated and continued to receive employer-sponsored health care benefits. [Def. 56(a)(1) Statement ¶ 20].

On July 2, 2018, Mr. Nako sent Plaintiff a letter notifying him that he would be medically disqualified from employment unless he submitted information from his physician by July 16, 2018. [Def. 56(a) Statement ¶ 27](admitted as to contents of letter). Plaintiff testified that he did not receive the letter and therefore did not respond to it. [Def. Ex. 5 (Irizarry Depo.) at 72:01-72:13].

Thereafter, Plaintiff received a letter dated August 6, 2018 from Mark Fallon stating that it served as confirmation of Plaintiff's resignation because he failed to respond to the July 2018 letter. [Dkt. 32-18, Def. Ex. 17 (Aug. 6, 2018 ltr.)]. Plaintiff contacted his union in response to the letter and also contacted Defendant regarding the payout of his pension. Def. Ex. 5 (Irizarry Depo.) at 72:01-72:13]; [Def. 56(a)(1) Statement ¶ 28](admitted). Thereafter, he received a letter from the director of human resources stating that he was terminated due to medical disqualification; this meant that he would receive job postings from Defendant for six months and was eligible for rehire. [Def. 56(a)(1) Statement ¶¶ 29, 30, 32](admitted). Plaintiff did not reapply for any open positions until February 2019 when a bus operator position became available. [Def. 56(a)(1) Statement ¶¶ 32-33](admitted). Plaintiff was rehired as a bus operator beginning in April or early May 2019 after he passed the physical examination, including the dexterity test. [Def. 56(a)(1) Statement ¶ 33](admitted). Plaintiff testified that he had a good relationship with his superintendents and supervisors. [Def. 56(a)(1) Statement ¶ 34](admitted).

## Legal Standard

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of proving that no genuine factual disputes exist. *See Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010). "In determining whether that burden has been met, the court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought." *Id.* (citing

*Anderson*, 477 U.S. 242, 255 (1986); *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). This means that "although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000); see *Welch-Rubin v. Sandals Corp.*, No. 3:03-cv-00481, 2004 WL 2472280, at *4 (D. Conn. Oct. 20, 2004) ("At the summary judgment stage of the proceeding, [the moving party is] required to present admissible evidence in support of their allegations; allegations alone, without evidence to back them up, are not sufficient.") (citing *Gottlieb*, 84 F.3d at 518); *Martinez v. Conn. State Library*, 817 F. Supp. 2d 28, 37 (D. Conn. 2011). Put another way, "[i]f there is any evidence in the record that could reasonably support a jury's verdict for the nonmoving party, summary judgment must be denied." *Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH*, 446 F.3d 313, 315–16 (2d Cir. 2006) (internal quotation marks and citation omitted).

A party who opposes summary judgment "cannot defeat the motion by relying on the allegations in his pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cnty of Orange*, 84 F.3d 511, 518 (2d Cir. 1996). Where there is no evidence upon which a jury could properly proceed to find a verdict for the party producing it and upon whom the onus of proof is imposed, such as where the evidence offered consists of conclusory assertions without further support in the record, summary judgment may lie. *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 726–27 (2d Cir. 2010).

## Analysis

As an initial matter, the heading of the sole remaining count of the Complaint alleges Discrimination, Hostile Work Environment, and Retaliatory Termination in Violation of Title VII. [Compl. at 3]. Title VII makes it unlawful to discriminate against an individual with respect to the terms and conditions of employment because of an individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e(2)(a). Although Title VII often informs courts' interpretation and application of the ADA, it is a standalone statute. *See Natofsky v. City of New York*, 921 F.3d 337, 349 (2d Cir. 2019), *cert. denied*, 140 S. Ct. 2668, 206 L. Ed. 2d 822 (2020)(holding that the ADA does not incorporate Title VII's "mixed-motives" standard).

There are no allegations in the Complaint alleging discrimination on any basis other than disability. Additionally, Plaintiff does not allege that he was harassed on account of his disability. To the contrary, Plaintiff had a good relationship with his managers and successfully re-applied for employment.

Plaintiff does not assert that the physical examination requirements for determining an employee's fitness to return to work operating a bus are discriminatory or that they were applied in a discriminatory manner. There is no dispute that Plaintiff was unable to perform the essential function of a bus operator from the time he was injured in September 2017 through his termination in August 2018. As evidenced by Plaintiff's opposition brief, Plaintiff is proceeding on a theory that Defendant failed to accommodate Plaintiff's disability because it failed

to engage in the interactive process by not alerting Plaintiff to potential transfer opportunities. [Pl. Mem. in Opp'n at 3-4, 7-11].

Pursuant to 42 U.S.C. § 12112, "no covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."[2]

Discrimination under Title I of the ADA includes, *inter alia*, "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C.A. § 12112(b)(5)(A). By its express terms, the ADA considers reassignment to a vacant position as a potential reasonable accommodation. 42 U.S.C. § 12112(9).

To establish a prima facie case of discrimination based on an employer's failure to accommodate a disability, under the ADA, a plaintiff must demonstrate

---

[2] The term "qualified individual" is defined by ADA to mean: "… an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. For the purposes of this subchapter, consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." 42 U.S.C. § 12112(8)

13

that "(1) [the plaintiff] is a person with a disability under the meaning of [the statute in question]; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 97 (2d Cir. 2009) (internal quotation marks omitted).

"The ADA envisions an "interactive process" by which employers and employees work together to assess whether an employee's disability can be reasonably accommodated." *Jackan v. New York State Dep't of Lab.*, 205 F.3d 562, 566 (2d Cir. 2000)(citing 29 C.F.R. § 1630.2(o)(3)).

Defendant argues it is entitled to summary judgment on Plaintiff's failure to accommodate claim because: (1) Plaintiff was provided with a reasonable accommodation in the form of seven additional months of leave and (2) there was no vacant position that Plaintiff was qualified for that did not involve operating a bus. [Dkt. 31 (Def. Mem. in Supp.) at 21-26]. In opposition, Plaintiff argues that material issues of fact exist because Defendant failed to engage in the interactive process by failing to inform Plaintiff of open positions after he requested consideration for other work opportunities following his March 29, 2018 fitness for duty physical examination. [Pl. Mem. in Opp'n at 7-9]. In reply, Defendant argues that Plaintiff has not claimed or demonstrated that he was qualified for any vacant positions prior to his termination. [Def. Repl. Br. at 1-6]. The Court agrees with the Defendant.

14

The Court agrees with Plaintiff that there are significant factual disputes concerning whether the Defendant engaged in the interactive process to determine if Plaintiff's disability could be accommodated through transfer to a vacant position. Interpreting the facts in a light most favorable to Plaintiff, the Court agrees that the break down in communication regarding a potential reassignment primarily lies with the Defendant. It is undisputed that Plaintiff made at least an oral request for consideration for any internal opening that did not require driving a bus with passengers. Ms. Turley and Mr. Nako were aware of Plaintiff's physical limitations and his request for reassignment, but they both deferred to Mr. Fallon. Apparently, Mr. Fallon never followed up with Ms. Turley after his conversation with the maintenance department manager and the human resources manager was wholly unaware of the situation. Plaintiff testified to having called Ms. Turley three times. Apart from Plaintiff's vague testimony, there is no evidence that Defendant sent Plaintiff available openings between March 2018 and until his termination in August 2018.

However, it is well established in the Second Circuit that failure to engage in the interactive process does not itself give rise to liability under the ADA. In *McBride v. BIC Consumer Prod. Mfg. Co.*, 583 F.3d at 100, the Second Circuit held that failure to engage in the interactive process does not form the basis for liability under the ADA unless the employee bears their burden of persuasion to show that an accommodation was possible. *Graves v. Finch Pruyn & Co.*, 353 F. App'x 558, 561 (2d Cir. 2009)(same); *Sheng v. M&TBank Corp.*, 848 F.3d 78, 86 (2d Cir. 2017)(same); *Noll v. Int'l Bus. Machines Corp.*, 787 F.3d 89, 97-98 (2d Cir. 2015)(same);

*see also Jackan*, 205 F.3d at 567 (holding that the employee bears both the burden of production and the burden of persuasion on the question of whether a suitable vacancy existed at the time transfer is sought as an accommodation). Further, "[t]he employer's failure to engage in such an interactive process, however, does not relieve a plaintiff of her burden of demonstrating, following discovery, that some accommodation of her disability was possible." *McBride*, 583 F.3d at 101. Accordingly, in *McBride*, the Second Circuit affirmed the grant of summary judgment for the employer where the employee, a manufacturing worker who could no longer be exposed to noxious fumes, could not establish that she was qualified for any of the vacancies. *Id.* at 99.

If the failure to engage in the interactive process does not give rise to liability under the ADA, what incentive does an employer have to engage employees in dialog to determine whether a reasonable accommodation exists? The Second Circuit in *McBride* explained that by failing to engage in the interactive process the employer "risks not discovering a means by which an employee's disability could have been accommodated and thereby increases the chance that it will be found to have violated the ADA." *Id.* at 101. Additionally, the failure to engage in the interactive process can also be introduced as evidence of disability discrimination, with the caveat that the employee must still show the existence of a reasonable accommodation. *Sheng*, 848 F.3d at 87.

Plaintiff argues that under *Curry v. Allan S. Goodman*, 286 Conn. 390, 418, 944 A.2d 925 (2008), he need only establish that the Defendant failed to engage in the interactive process to survive summary judgment. [Pl. Mem in Opp'n at 8, 11];

16

("Failure of the employer to engage in the interactive process alone may be sufficient grounds for denying a defendant's motion for summary judgment, because it is, at least, some evidence of discrimination.") *Curry*, 286 Conn. at 418.

The Connecticut Supreme Court in *Curry* was interpreting the Connecticut Fair Employment Practices Act and the trial court's application of Connecticut's summary judgment standard, as the district court previously dismissed Curry's federal ADA claim and remanded the state claims for lack of jurisdiction. 286 Conn. at 397-98. *Curry* was decided before *McBride*. As *McBride* demonstrates, under the ADA, summary judgment may lie for the employer where the employee fails to establish the existence of a reasonable accommodation because the failure to engage in the interactive process could not support a verdict for the employee without more. Whether the failure of an employer to engage in the interactive process alone is a sufficient ground to deny an employer's motion for summary judgment on a failure to accommodate claim appears to be a distinction in the application of Connecticut and federal law. *Compare Diaco v. Norwalk Pub. Sch. Dist.*, No. FSTCV106007107S, 2014 WL 5138009 Conn. Super. Ct. Sept. 9, 2014)(relying on *Curry* in denying summary judgment because the employer failed to demonstrate that they engaged in the interactive process) to *McBride*, 583 F.3d at 101 ("… we adopt the reasoning of our sister Circuits and hold that an employer's failure to engage in a sufficient interactive process does not form the basis of a claim under the ADA and evidence thereof does not allow a plaintiff to avoid summary judgment unless she also establishes that, at least with the aid of some identified accommodation, she was qualified for the position at issue."); *see also*

*Desmond v. Yale-New Haven Hosp.*, Inc., 738 F. Supp. 2d 331, 353 (D. Conn. 2010)(granting summary judgment and holding that *McBride* barred employee's claim that defendant failed to engage in the interactive process because employee could not identify a reasonable accommodation that would have enabled her to perform the essential functions of her position).

The reasoning of *McBride* bars the Plaintiff's claim in this case. Plaintiff must show the existence of a vacant position to which he could have been reassigned after he sought an accommodation. *See Jackan*, 205 F.3d at 566–67. "[A]n employer need not reassign an employee if no position is vacant. Nor is the employer obliged to create a new position to accommodate the employee." *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 99 (2d Cir.1999) (citation omitted)).

Setting aside the issue of whether operating a bus is an essential function of a cleaner and whether Plaintiff could legally or safely perform that task if passengers were not present, Plaintiff has adduced no evidence to show that there were any openings for a cleaner after he requested consideration for a transfer following his fitness for duty examination on March 27, 2018. Plaintiff testified that he did not see any positions open. Mr. Torres's affidavit demonstrates that the Defendant considered the possibility that Plaintiff could work as a cleaner if a position became available, but dismissed the idea because they felt that Plaintiff could not operate a bus safely notwithstanding the physician assistant's suggestion to the contrary. Since there is no evidence to establish a vacancy, whether Plaintiff could perform the job with or without an accommodation is immaterial.

As to the traffic specialist position, Plaintiff fails to establish that the position was vacant because it appears on the March 9, 2018 job opportunities list but was not included on the list two weeks later, meaning that the job was not available when Plaintiff made the accommodation request. Moreover, Plaintiff testified that he did not have any experience with record keeping, which was a stated requirement of the job. Similarly, while the cashier position may have been open on or after March 27, 2018, Plaintiff has not adduced any evidence to show that he was qualified for the position, which required two years of full-time experience with record keeping. Plaintiff has not shown that the essential functions of these positions are in practice different than the Defendant's job descriptions.

In sum, as was the case in *McBride*, Defendant is entitled to summary judgment because Plaintiff failed to show that he was qualified for a vacant position. *See McBride*, 583 F.3d at 99. ("All of the vacant secretarial positions required extensive secretarial experience and familiarity with a variety of business software, which, as already noted, there is no evidence that McBride possessed. Finally, there is no indication in the record that there were any vacant receptionist positions at or about the time of McBride's dismissal.").

Finally, there is no evidence to suggest that Plaintiff was terminated because of a discriminatory animus. Plaintiff received eleven months of medical leave, including seven additional months after he exhausted FMLA leave. Defendant continued to send Plaintiff letters seeking additional information regarding when he would be able to return to work. At the time of his termination, it was undisputed that Plaintiff was medically unable to resume working as a bus operator with or

without an accommodation within a finite, reasonable time. Plaintiff did not request, and the ADA does not require indefinite unpaid medical leave. *See Graves*, 457 F.3d at 185-86 (citing *Parker*, 204 F.3d at 338). Plaintiff does not show that any similarly situated non-disabled employees were treated more favorably. Additionally, Plaintiff had a good relationship with his supervisors and managers and does not allege or show that any decision-maker harbored a discriminatory animus.

As the Court has determined that there is no evidence showing that Plaintiff was qualified for a vacant position, given the duration of his leave, the decision to terminate him for medical disqualification can not constitute disability discrimination because he was no longer qualified to perform the essential functions of the position. Therefore, Plaintiff fails to demonstrate a prima facie case to establish a discriminatory discharge and the Court must grant Defendant's motion for summary judgment. *Parker*, 204 F.3d at 332.

## Conclusion

For the above stated reasons, the Court GRANTS Defendant's motion for summary judgment. The Clerk is directed to enter judgment for the Defendant and to close this case.

IT IS SO ORDERED.

/s/
Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: March 29, 2021